**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**BRIAN JOSEPH ROCHELEAU,**

**Plaintiff,**

**v.**

**CORPORAL K. HEARN,**

**Defendant.**

**3:12-CV-00541-BR**

**OPINION AND ORDER**

**BRIAN JOSEPH ROCHELEAU**
#14937686
Snake River Correctional Institution
777 Stanton Boulevard
Ontario, OR 97914-8335

Plaintiff, *Pro Se*

**ELLEN ROSENBLUM**
Attorney General
**KRISTIN A. WINGES-YANEZ**
Assistant Attorney General
State of Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
(503) 947-4700

Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#100) for Summary Judgment. For the reasons that follow, the Court **DENIES** Defendant's Motion.

**BACKGROUND**

On March 25, 2011, Plaintiff Brian Rocheleau[1] was involved in an altercation with another inmate while both were housed at Two Rivers Correctional Institution (TRCI). Plaintiff alleges during the altercation with the other inmate, Defendant Corporal Ken Hearn intentionally and maliciously struck Plaintiff in the left eye, which caused Plaintiff to suffer painful headaches, blurred vision, and anxiety.

Also on March 25, 2011, Defendant filed a Misconduct Report in which he described his interaction with Plaintiff:

> I observed Inmate Rocheleau go to cell 15 and then I was giving directives to another inmate who was standing at the control point. I heard a loud noise from the dayroom and when I turned around I observed Inmate Rocheleau running after Inmate [REDACTED] moved to the area and called a fight on unit 6 and then gave several directives to stop fighting. I observed the fact that Inmate [REDACTED] was not engaged in the fight and was only trying to keep from being hit by Inmate Rocheleau. Inmate [REDACTED] was knocked to the floor and Inmate Rocheleau jumped on his back and threw closed hand punches to the back, front and both sides of head. Inmate [REDACTED] covered up and did not return any blows. I grabbed Inmate Rocheleau on the

[1] Plaintiff is currently an inmate at Snake River Correctional Institution (SRCI).

> shoulders from behind in an attempt to stop him throwing blows. When I was unable to stop the assault, I reached for my spray but C/O D. West arrived at that time and told Inmate Rocheleau to stop fighting or he would spray him. Inmate Rocheleau finally disengaged and I was able to restrain him and C/O West restrained Inmate [REDACTED]. All the time, I was attempting to stop Inmate Rocheleau from hitting Inmate [REDACTED] I was giving directives to stop fighting. Inmate Rocheleau was in an unauthorized area because he was told to put his property away and he instead he went to the dayroom and started his assault. All of this took place in the presence of at least 60 or more inmates. This caused a direct threat to the safety and security of the institution.

Decl. of Ken Hearn, Ex. 2 at 1.

Defendant submitted a DVD recording of the altercation and Defendant's intervention that reflects the altercation lasted approximately 25-30 seconds and Plaintiff did not stop fighting with the other inmate for approximately 20 seconds after Defendant intervened. It is clear from the recording that Defendant grabbed Plaintiff from behind. Defendant's back, however, is to the camera and blocks the view of Defendant's hands and Plaintiff's head for the majority of the incident. The recording, therefore, does not establish whether Defendant struck Plaintiff in the left eye.

After the altercation Plaintiff reported to TRCI Medical Services. Plaintiff's chart notes reflect he had "a L eye bruise & swelling & very small laceration ø active bleeding when assessed. Small scrape on L elbow noted. Knuckles on both hands are redened [*sic*]. Instructed to use ice for swelling & Tylenol

for pain. Pt denies any pain at this time." Decl. of Bridgett Whelan, Ex. 1 at 1.

On May 3, 2011, Plaintiff reported to TRCI Medical Services that "since [he] was in a fight and got hit @ temple area, [his] vision has been blurry and [he] get[s] headaches 'really bad.'" Whelan Decl., Ex. 1 at 1.

On May 6, 2011, Plaintiff submitted an Inmate Communication Form in which he noted:

> Due to an extensive blow to my left eye on 3-25-11 I have been experiencing severe migraines and at time my vision becomes blurry. . . . On a scale of 1-10 my migraines are a solid 8-9. I cannot sleep, eat, or generally function normally when this type of pain comes, which is nearly every single day.

Decl. of Plaintiff, Ex. 4 at 1.

On November 3, 2011, Plaintiff submitted a second Inmate Communication Form complaining of continued migraines and loss of vision in his left eye and requesting diagnostic imaging tests to determine the extent and the cause of his injury sustained March 25, 2011.

On March 23, 2012, Plaintiff filed a *pro se* § 1983 Complaint in this Court alleging Defendant violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment when Defendant intentionally struck Plaintiff in the left eye during the altercation on March 25, 2011. Plaintiff seeks damages and a declaration that Defendant violated Plaintiff's rights under the Eighth Amendment.

On April 1, 2013, Defendant filed a Motion for Summary Judgment.[2] The Court took this matter under advisement on May 13, 2013.

**STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

---

[2] The Court issued a summary judgment advice notice to Plaintiff on April 3, 2013.

1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Defendant moves for summary judgment on the grounds that

(1) Plaintiff's claim is barred by the Eleventh Amendment, (2) Defendant did not violate Plaintiff's rights under the Eighth Amendment, and (3) Defendant is entitled to qualified immunity.

**I. Eleventh Amendment**

Defendant asserts Plaintiff's claim is barred by the Eleventh Amendment because Plaintiff "appears to have brought suit against Defendant Hearn in his official capacity" and official-capacity actions against state actors are barred in this Court under the Eleventh Amendment.

Plaintiff does not allege in his Complaint whether he brings this action against Defendant in his official or individual capacity. In Plaintiff's Response to Defendant's Motion for Summary Judgment, however, Plaintiff asserts he brings this action against Defendant in his individual capacity. In addition, the nature of Plaintiff's allegations and the relief he seeks support Plaintiff's assertion that he brings this action against Defendant in his individual capacity. Specifically, Plaintiff has not alleged that a policy or procedure of TRCI allegedly violated his rights. Instead Plaintiff alleges Defendant himself violated Plaintiff's rights when he hit Plaintiff. Moreover, Plaintiff seeks damages as well as declaratory relief.

Even if Plaintiff had not clarified the capacity in which he brings this action against Defendant, the Ninth Circuit has held

the court should presume an official is being sued in his individual capacity when a complaint seeking damages under § 1983 does not allege whether the official is sued in his individual or personal capacity. *See Shoshone-Bannock Tribes v. Fish & Game Com'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1984). *See also Blaylock v. Schwinden*, 863 F.3d 1352, 1354 (9th Cir. 1988).

The Court concludes Plaintiff has established that he brings his claim against Defendant in Defendant's individual capacity. Accordingly, the Court concludes Plaintiff's claim is not barred by the Eleventh Amendment.

**II. Violation of Defendant's Eighth Amendment rights**

Defendant also seeks summary judgment on the grounds that (1) he did not strike Plaintiff in the eye, (2) his use of force was necessary to maintain order and to defend another inmate from immediate physical harm by Plaintiff, (3) the amount of force Defendant used was appropriate, and (4) Plaintiff's injury was *de minimus*.

**A. Standards**

"'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)(quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). When prison officials are accused of using excessive physical force to quell a prison disturbance in violation of the Eighth Amendment, "the core

judicial inquiry" is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)(quoting *Hudson*, 503 U.S. at 7).

When prison officials maliciously and sadistically use force to cause harm, "'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). Nevertheless, the Supreme Court has made clear that the absence of serious injury is not irrelevant and that "t]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* at 38 (quotation omitted).

> As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).
>
> Injury and force, however, are only imperfectly

> correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Accordingly, the Court concluded in *Hudson* that the supposedly "minor" nature of the injuries "provide[d] no basis for dismissal of [Hudson's] § 1983 claim."

*Id.*

The Ninth Circuit has held courts should consider five factors when determining whether the use of force was wanton and unnecessary:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

*Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)(citing *Hudson*, 503 U.S. at 7).

**B. Need for application of force and the threat perceived by Defendant**

Plaintiff does not dispute Defendant needed to use some degree of force under the circumstances because Defendant reasonably perceived Plaintiff was a threat to the other inmate. Plaintiff does not dispute he was involved in an altercation with another inmate and that the other inmate did not fight back and sought only to protect himself against Plaintiff's attack. The DVD recording of the incident reflects Plaintiff did not stop his assault on the other inmate when Defendant sought to intervene.

ODOC regulations specifically authorize the use of force in a good-faith effort "to maintain legitimate correctional objectives: for self defense or [to] defend another person against an inmate by using reasonable force." Or. Admin. R. 291-013-0065(1). On this record the Court concludes Defendant was entitled to use some degree of force to stop the altercation.

**C. Degree of force used**

As noted, Defendant maintains he did not hit Plaintiff in the eye (intentionally or not). Defendant testifies in his Declaration that he grabbed Plaintiff by the shoulders and attempted to pull him off of the other inmate, but Plaintiff did not stop hitting the other inmate until additional prison staff arrived. Defendant also relies on the DVD recording of the altercation to support his assertion that he did not hit Plaintiff in he eye. The recording clearly reflects Plaintiff did not stop hitting the other inmate when Defendant intervened, and, in fact, Plaintiff continued with his assault for approximately 20 seconds until another guard arrived. As noted, however, the recording does not provide a clear view of Defendant's hands or Plaintiff's left eye for much of their interaction.

Plaintiff, in turn, relies on the Affidavit of Kevin Stanford, an inmate who witnessed the altercation in question, to support his allegation that Defendant intentionally hit him in

the eye. Stanford testifies he was in the unit on March 25, 2011. When Stanford heard "stop fighting, stop fighting," he looked to his right and saw Defendant "coming out of the office shaking a can of chemical spray." Rocheleau Decl., Ex. 1 (Stanford Aff.) at ¶ 3. Stanford testifies he saw Defendant come up behind Plaintiff while Plaintiff was on top of the other inmate and "hit [Plaintiff] in the side of the face with the can of chemical spray itself." *Id.* at ¶ 4.

Plaintiff also relies on Defendant's report of the attack in which Defendant noted the other inmate did not fight back, and, therefore, according to Plaintiff, Defendant must have caused the injuries to Plaintiff's eye and/or head.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes on this record that Plaintiff has established a genuine dispute of material fact exists as to the extent of force used by Defendant.

**D. Relationship between the amount of force used and the need for force**

Defendant asserts he used force in an good-faith effort to restore discipline, not maliciously or sadistically to cause harm. Defendant relies on three cases from other districts to support his assertion. In *Meza v. Director of California Department of Corrections*, the court held the plaintiff did not state a claim for violation of the Eighth Amendment when he alleged the defendant corrections officer slammed his head to the

wall, causing the plaintiff to develop a bruise. No. 1:05-CV-01180-OWW-LJO-P, 2006 WL 1328220, at *3 (E.D. Cal. May 15, 2006). The court in *Meza*, however, did not analyze whether the defendant applied the force in a good-faith effort to maintain and to restore discipline or maliciously and sadistically to cause harm. The court based its holding on a conclusion that the injury suffered by the plaintiff was *de minimis*, but the Supreme Court recently has found that type of analysis to be insufficient. *See Wilkins*, 559 U.S. at 38 ("To conclude, as the District Court did here, that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an [Eight Amendment] claim improperly bypasses th[e] core inquiry" as to whether the force "was applied . . . maliciously and sadistically to cause harm."). Accordingly, *Meza* does not establish the force used by Defendant was not applied in a good-faith effort to maintain or to restore discipline.

Defendant also relies on *Crow v. Leach* in which the plaintiff, an inmate, and the defendant, a correctional counselor, met in order for the defendant to provide the plaintiff with certain legal documents. It was undisputed that the defendant gave the plaintiff the documents, asked the plaintiff to sign them, and asked the plaintiff to return the documents. The plaintiff refused to return the documents even after the defendant gave him two direct orders to do so. The

plaintiff alleged he attempted to get up and to leave after refusing to return the documents, and the defendant pushed the plaintiff with both hands causing the plaintiff to fall backwards and forcing his right arm through a window, at which point the plaintiff hit the defendant in self-defense. No. C-93-20199 WAI, 1995 WL 456357, at *1 (N.D. Cal. July 28, 1995). The defendant alleged the plaintiff leapt out of his chair and assumed a "combative stance" when the plaintiff refused to return the documents. The defendant put his hand on the plaintiff's chest to "create some space" between them. The plaintiff hit the defendant in the jaw, and the defendant then defended himself by hitting the plaintiff in the mouth causing the plaintiff's shoulder to hit and to break the window. *Id.* The defendant moved for summary judgment on the plaintiff's Eighth Amendment claim. The court granted the defendant's motion reasoning in pertinent part:

> The next inquiry is whether the relationship between the need to control Crow and the amount of force used was reasonable. Viewing the facts in a light most favorable to Crow, the amount of force used was reasonable. Crow alleges that Leach pushed him backwards and he fell into his chair causing his shoulder to break the window behind him. Leach did not hit Crow with a closed fist, nor does Crow allege that he was intentionally pushed into the window. Even under Crow's scenario, his fall into the window was incidental to being pushed back into his chair. Leach did not exceed the scope of his authority by trying to force Crow to sit and follow orders.
>
> The Eighth Amendment necessarily excludes from

> constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' *Whitely*, 475 U.S. at 327. However, when prison officials maliciously and sadistically use force to cause any harm, contemporary standards of decency are always violated. *Id.* Crow has suffered minor bruises and cuts. He has not alleged any significant or permanent injury. It is not repugnant to the conscience of mankind for a prison official to push an inmate into his seat under these circumstances. Moreover, Leach did not exhibit, and Crow does not allege, any malicious or sadistic intent. Given the minimal extent of the injuries, and that the use of force was reasonable under the circumstances, Crow's injuries do not rise to constitutional levels.

*Id.*, at *2-*3. This case is closer to the circumstances here. In particular, it is undisputed that Defendant was entitled to use some degree of force because Plaintiff was engaged in an altercation with another inmate. Unlike in *Crow*, however, Plaintiff alleges Defendant intentionally struck him in the face, and Stanford makes a similar allegation in his Affidavit. Plaintiff also alleges a significant injury that has had long-term effects including headaches and blurry vision, and his reports of those effects are reflected in the record. *Crow*, therefore, does not establish as a matter of law that the force used by Defendant was not applied maliciously or sadistically to cause harm as opposed to in a good-faith effort to restore discipline.

Finally, Defendant relies on *Olson v. Coleman* in which the plaintiff inmate alleged the defendant correctional officer

struck him once in the head during transport. 804 F. Supp. 148, 149 (D. Kan. 1992). The court granted the defendant's motion for summary judgment on the plaintiff's Eighth Amendment claim on the grounds that there was not any evidence that the event occurred as the plaintiff alleged, that the blow was delivered by the defendant, nor that the plaintiff suffered a serious or ongoing injury as a result of the blow. *Id.* at 150. Here, however, Plaintiff has a witness who testifies Defendant hit Plaintiff in the head deliberately with a can, and Plaintiff alleges ongoing medical issues resulted from the blow. *Olson*, therefore, does not establish as a matter of law that the force was applied by Defendant in a good-faith effort to restore discipline rather than maliciously or sadistically to cause harm.

On this record the Court concludes Plaintiff has established a genuine dispute of material fact exists as to the degree of force used by Defendant and as to whether Defendant applied force maliciously or sadistically to cause harm rather than in a good-faith effort to restore discipline.

**III. Qualified Immunity**

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dunn v. Castro*, 621 F.3d

1196, 1198-99 (9th Cir. 2010). Qualified immunity shields a government official "from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted.'" *Smith v. Almada*, 623 F.3d 1078, 1083-84 (9th Cir. 2010)(quoting *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004)).

The Ninth Circuit uses "a two-step analysis to determine whether the facts show that: (1) the conduct of the [defendants] violated a constitutional right; and (2) the right that was violated was clearly established at the time of the violation." *Huff v. City of Burbank*, No. 09-55239, 2011 WL 71472, at *6 (9th Cir. Jan. 11, 2011)(citing *Saucier*, 533 U.S. at 201).

It is clearly established that the malicious or sadistic use of force to cause harm is a violation of the Eighth Amendment. The Court, however, has concluded Plaintiff has established a genuine dispute of material fact exists as to the degree of force used by Defendant and as to whether Defendant used force maliciously or sadistically to cause harm. The Court, therefore, cannot conclude as a matter of law at this time that Defendant is entitled to qualified immunity because there is a fact issue as to whether Defendant violated Plaintiff's Eighth Amendment rights.

**IV. Counsel**

On March 30, 2012, the Court issued an Order denying

Plaintiff's Motion for Appointment of Counsel on the grounds that at that time Plaintiff had demonstrated a sufficient ability to articulate his claims and that the facts and legal issues involved were not of substantial complexity to necessitate appointment of counsel. Because, however, this matter is now going to proceed to trial, the Court believes it would be helpful for Plaintiff to have counsel to assist him at trial. Accordingly, the Court **DIRECTS** Plaintiff to advise the Court **no later than July 29, 2013**, whether he would like the Court to seek appointment of *pro bono* counsel for Plaintiff.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#100) for Summary Judgment. The Court **DIRECTS** Plaintiff to advise the Court **no later than July 29, 2013**, whether he would like the Court to seek appointment of *pro bono* counsel for Plaintiff.

IT IS SO ORDERED.

DATED this 11th day of July, 2013.

Anna J. Brown

ANNA J. BROWN
United States District Judge